## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**PERDIDO TOWERS OWNERS ASSOCIATION, INC.,**
**a Florida not-for-profit corporation,**

        **Plaintiff,**

**v.**                              **Case No. 3:06cv396/MCR**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,**

        **Defendant.**

_____/

## O R D E R

       In this flood insurance dispute Plaintiff Perdido Towers Condominium Association, Inc., ("Perdido Towers" or "plaintiff") sues defendant Nationwide Mutual Fire Insurance Company ("Nationwide" or "defendant") for breach of contract and declaratory relief. Presently before the court are the parties' cross-motions for summary judgment.  For the reasons discussed below, the court grants Nationwide's motion and denies Perdido Towers' motion.

## BACKGROUND

       The following facts are undisputed.[1] Plaintiff is an owners' association that is

---

    [1]  At summary judgment the court must view the facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  When evaluating cross-motions for summary judgment, the court analyzes each individual motion on its own merits and thus views the facts on each motion in the light most favorable to the respective nonmovant. *See Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003); *Coffin v. Brandau*, 2008 WL 2950117, *1 (M.D.Fla. 2008).

    In connection with its motion for summary judgment Perdido Towers filed a statement of undisputed facts, as required by N.D.Fla.Loc.R. 56.1(A).  Local Rule 56.1(A) also requires the nonmovant to file a statement of disputed facts in response to a motion for summary judgment.  In response to Nationwide's motion for summary judgment Perdido Towers evidently intended, but failed, to file a statement of disputed facts; instead, in an apparent clerical error, Perdido Towers filed a second, identical copy of the statement of

responsible for the maintenance and operation of condominium units known as the Perdido Towers, located on Perdido Key, near Pensacola, Florida.  Nationwide is a "write your own" insurer that participates in the National Flood Insurance Program ("NFIP").[2]   Defendant issued two Standard Flood Insurance Policies to Perdido Towers, one for each of Perdido Towers' two residential condominium towers, for the policy period January 17, 2004, through January 17, 2005.[3]   Hurricane Ivan, a Category 3 storm, struck the Northwest Florida region on or about September 16, 2004, causing severe damage to the towers and a pool house located between the towers.

Perdido Towers submitted various claims to Nationwide for the damage to its property caused by Hurricane Ivan.  Through an appraisal process the parties have now largely settled Perdido Towers' claims.  The only issue not resolved, and thus remaining in dispute in this lawsuit, is whether the SFIPs provide coverage for the damaged pool house.[4]

---

undisputed facts it submitted in connection with its own motion.  Because Perdido Towers failed to file a state of disputed facts, the court must treat the facts set forth in Nationwide's statement of undisputed facts as having been admitted by Perdido Towers. *See* Local Rul 56.1(A) ("All material facts set forth in the statement [of facts] required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party.").  With that qualification, where the court discusses disputed facts in connection with Nationwide's motion for summary judgment, it does so in the light most favorable to Perdido Towers, drawing those facts from the pleadings, depositions, and other evidentiary materials on file.

[2]  The Federal Emergency Management Agency ("FEMA"), which is charged with administering the NFIP, by regulation has promulgated the Standard Flood Insurance Policy ("SFIP") and provided for marketing and claims adjustment by private insurers operating as WYO companies. 44 C.F.R. § 62.23. The WYO companies issue SFIPs in their own names as insurer, and they arrange for the adjustment, settlement, payment and defense of all claims arising from the policies, with the federal government acting as the guarantor and reinsurer. *See*  § 61.13(f); § 62.23(d); *see also Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). Thus in issuing SFIPs WYO companies act as the fiscal agent of the United States government. *See Sanz v. United States Security Insurance Co.*, 328 F.3d 1314, 1316 (11th Cir. 2003). Congress has specifically authorized FEMA to appoint service agents to assist the NFIP in issuing and processing flood insurance applications and claims. *See*  42 U.S.C. § 4071.

[3]  The policies were issued under the Residential Condominium Building Association Policy form, policy numbers 5050069011and 5050069003.

[4]  Perdido Towers initiated this action while the appraisal process was still underway, seeking declaratory relief in connection with its claims for storm damage to the towers and the pool house.  It filed the instant amended complaint limited to only the issue of the pool house's coverage under the SFIPs when the parties reached agreement on all other matters, including the amount of damage to the pool house and the cost, if coverage exists, to repair that damage.

Whether the pool house may be properly defined as an extension or addition that is attached to and in contact with the towers by means of rigid walls is of central importance in determining whether the plain language of the SFIPs provides coverage for the pool house.  Perdido Towers identifies the structures that abut the pool house and the towers as rigid exterior walls, a characterization to which Nationwide objects.  Both parties have supplied photographs of the pool house and surrounding area, including the disputed structures.[5]  The photographs show parts of two condominium towers, with a pool and pool house located roughly midway between them.  The pool house is a rectangular-shaped building, with four exterior walls and its own roof, which is abutted by solid structures of approximately five feet in height and less than one foot wide.  The abutting structures run from the west side of the pool house towards the west tower and from the east side of the pool house towards the east tower.  These solid structures are interrupted by pedestrian gates composed of vertical metal bars spaced at what appears to be about four to six inches apart, inside a metal frame.  The solid, approximately 1' X 5' structures continue on the other side of each gate, with the structure on the east side of the pool house running roughly east towards the east tower and the structure on the west side of the pool house running roughly west towards the west tower.  Each of the structures ultimately terminates at, and directly abuts, either the west or east tower.

Nationwide argues that the pool house is not covered under the SFIPs because—as the plain and unambiguous language of the SFIPs requires— the pool house is not attached to or in contact with the towers by means of a "rigid exterior wall."  Perdido Towers submits that each of the solid structures running from the towers to the pool house in fact constitutes a "rigid exterior wall" and thus coverage under the SFIPs is afforded.  Alternatively, Perdido Towers contends, the language of the policies is ambiguous regarding the definition of a "rigid exterior wall" and therefore must be construed in favor of coverage.

---

[5] Perdido Towers states its photographs accurately depict the area as it looked prior to the September 2004 storm. Nationwide objects to the labels attached to Perdido Towers' photographs but not the depictions in the photographs themselves. Perdido Towers apparently does not object to Nationwide's photographs, which contain no labels. The court has reviewed all of the photographs, taking no notice of the labels affixed to Perdido Towers'.

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A factual dispute is "`genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Anderson*, 477 U.S. at 248; *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).  Nevertheless, a general denial unaccompanied by any evidentiary support will not suffice. *See, e.g., Courson v. McMillian*, 939 F.2d 1479 (11th Cir. 1991); *Hutton v. Strickland*, 919 F.2d 1531 (11th Cir. 1991).  Furthermore, the court is not obliged to deny summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *See Anderson*, 477 U.S. at 249.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at  586. Indeed, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Id.* at 252.  The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Once the movant satisfies its burden of demonstrating the absence of a genuine issue of material fact, the

burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (emphasis omitted). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

## DISCUSSION

As a result of the federal regulation and funding of the NFIP, provisions of the SFIP "must be strictly construed and enforced." *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 282 Fed. Appx. 317, 322 (5th Cir. 2008). The Eleventh Circuit has explained that SFIPs are contracts which are governed by federal law under standard insurance law principles. *Wright v. Director, Federal Emergency Management Agency*, 913 F.2d 1566, 1570 (11th Cir. 1990). Issues pertaining to contract interpretation, including whether the terms of a contract are ambiguous, generally implicate questions of law for the court to decide. *Carneiro Da Cunha v. Standard Fire Ins. Co.*, 129 F.3d 581, 584 (11th Cir. 1995). Applying ordinary rules of contract construction to a SFIP, "a court must first examine the natural and plain meaning of a policy's language." *Id.* at 585 (citation and internal quotation marks omitted). Although ambiguities resulting from a plain reading of the policy should be construed against the insurer, the court should not conclude that an ambiguity exists "simply because a contract requires interpretation or fails to define a term." *Id.* (citation and internal quotation marks omitted). In interpreting a SFIP, the court may not add meaning to the contract's "clear and unambiguous language." *Id.*

In this case, the parties agree that interpretation of Subsection A(3) of Section III of the SFIP is at the center of their dispute over whether the plain language of the policies provides coverage for the pool house.  In relevant part, Section III provides:

III.  PROPERTY COVERED

A.  COVERAGE A - BUILDING PROPERTY

We insure against direct physical loss by or from flood to:

* * *

3.  Additions and extensions attached to and in contact with the building by

> means of a rigid exterior wall . . . .  At your option, additions and extensions
> connected by any of these methods may be separately insured. . . .

Section III, subsection A(3) of SFIPs (*see* doc. 27, Exh. 1 at  p. 5); *see also* 44 C.F.R. pt.
61, App. A(3) (2003).

The parties focus on the meaning of the term "rigid exterior wall" as set out in
subsection A(3)—a term the SFIP does not define—and whether the pool house in fact is
attached to the towers by means of such a structure.   The court, however, first addresses
whether the pool house constitutes an "addition" or "extension," within the meaning of
subsection A(3).  The court could not locate within the SFIPs or applicable regulations a
definition for "additions" or "extensions"and the parties have pointed to none. While no
cases appear to address this SFIP provision as it currently appears in the dwellings,
general property, and residential condominium forms, *see* 44 C.F.R. pt. 61, App. A(1), A(2),
and  A(3),  several  older  cases  applying  similar  provisions  are  helpful  in  analyzing
subsection A(3) of plaintiff's SFIP.  In *Atlas Pallet, Inc. v. Gallagher,* 725 F.2d 131, 133 (1st
Cir. 1984), the First Circuit Court of Appeals reviewed a provision of a SFIP issued to a
pallet business located alongside a river.  Following a flood, the company brought a claim
under its SFIP for damage to its milldam. The court, observing that "[i]t is necessary, in
construing the terms 'additions' and 'extensions,' to consider the connection of the alleged
addition or extension with the use and purposes of the insured building," concluded that
the issue of coverage turned on "the relative location of the structures, their access[i]bility,
and adaptability to some common end" in the relevant circumstances of the case. *Id.* at
136.  Relying on this analytical framework, the court determined there was no "community
of use" between the milldam and the main building. *Id.* at 137. Rather, the court held that
the milldam was not an extension of the plaintiff's main building, and thus not covered
under the SFIP, because it merely supplied water for the business' fire sprinklers and was
not "indispensably connected or related to the purpose or use" of the main building. *Id*.  In
*Sandia Oil Co., Inc. v. Beckton,* 889 F.2d 258 (10th Cir. 1989), the Tenth Circuit Cour of
Appeals applied the analysis used in *Atlas Pallet* to affirm the district court's award of
coverage under a gas station's SFIP which the carrier had denied.  In part, the appellate
court held that the gas station's uniquely designed "canopy and its concrete foundation and
[ ] pay booth comprise[d] one whole functionally integrated unit, operation, and structure."

*Sandia Oil* Co., 889 F.2d at 260.  Further, there was a "definite and necessary connection, as contemplated by the parties to the [SFIP], between the canopy and its concrete foundation and the use and purposes of the pay booth, allowing the canopy and its concrete foundation to be considered an integral part, addition, or extension of the pay booth." *Id.*

In this case, taking into consideration the connection of the pool house to the use and purposes of the two towers, this court concludes that there is no "community of use" is sufficient to characterize the pool house as an addition to or extension of the insured structures.  The towers are condominium buildings designed and used for residential purposes.  There is no evidence suggesting that the pool house serves as anything more than what its photographs reflect and its name implies: a building used for recreational, rather than residential, purposes.  As such, it cannot be said that the pool house is "indispensably connected or related to the purpose or use" of the towers. *Atlas Pallet,* 725 F.2d at 137.  Nor does there appear to be anything unique about the pool house's design or use that would render it and the towers "one whole functionally integrated unit, operation, and structure." *Sandia Oil* Co., 889 F.2d at 260.

Even assuming, *arguendo*, that the pool house is an addition to or extension of the towers, the court nevertheless concludes that the SFIP does not provide coverage.  The court gives the term "rigid exterior wall"  its natural and plain meaning. *See Carneiro Da Cunha*, 129 F.3d at 585.  The court also considers the design, construction, and location of the structures at issue in this case as they appear in the photographs and are described by the parties.  So doing, the court finds that the structures may be properly defined as "rigid exterior walls." That conclusion is not enough, however, to support a finding of coverage:  the court must also find that the pool house is "attached to and in contact with" the towers by means of those walls.  Here,  the facts demonstrate otherwise.  A section of wall runs from each tower towards the pool house, and from the pool house a section of wall runs towards each tower. These sections of wall are not continuous, however; rather, they are interrupted by metal gates that provide pedestrian ingress and egress to the pool area.  As such, relying on the clear and unambiguous language of the relevant provision quoted above—language which is not susceptible to any other reasonable interpretation and thus not unacceptably ambiguous, *see Carneiro Da Cunha*, 129 F.3d at 585—the

court finds that the pool house cannot be said to be "attached to and in contact with" either of the insured buildings.

For all of the foregoing reasons, the court concludes that Perdido Towers has not shown the existence of a material issue of fact precluding summary judgment in Nationwide's favor. Nationwide's motion for summary judgment is therefore granted.[6]  *See Celotex Corp.*, 477 U.S. at 322.  Perdido Towers' cross motion for summary judgment is denied.

Accordingly, it is hereby ORDERED:

1.      Defendant Nationwide Mutual Fire Insurance Company's motion for summary judgment (doc. 27) is GRANTED, and plaintiff Perdido Towers Condominium Association, Inc.'s cross motion for summary judgment (doc. 33) is DENIED.  Plaintiff's claims are DISMISSED, with prejudice**.**

2.      Consistent with this order, the clerk of court is directed to enter summary judgment in favor of defendant.  Plaintiff shall take nothing further by this action and hence goes without day.

3.      Costs shall be taxed against plaintiff.

**DONE and ORDERED** this 21st day of April, 2009.

s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[6]  Nationwide makes numerous additional arguments in support of its motion.  They include that the pool house is not listed separately on the declarations page or any schedule of insurance; Perdido Towers failed to provide an elevation certificate for the pool house, although one is required to obtain coverage; Perdido Towers paid no separate flood insurance premium for the pool house; Perdido Towers' flood insurance history indicates the pool house was not covered by previous flood insurance policies but was separately covered for fire and wind damage; and, even if Perdido Towers made payments in the past that arguably included the pool area, the doctrine of equitable estoppel provides no basis for obtaining insurance coverage.

Several of these arguments appear to be well-taken. In light of its conclusion that the plain and unambiguous language of the SFIPs does not provide coverage for the pool house, however, the court need not reach them.